1  Peter M. Lively, 162686
   Hillary C. Coleman, Of Counsel, 156584
2  Ilya B. Volk, 272407
   LAW OFFICE OF PETER M. LIVELY
3  11268 Washington Blvd., Suite 203
   Culver City, California 90230-4647
4  Telephone No. (310) 391-2400
   Facsimile No. (310) 391-2462
5  PeterMLively@aol.com

6  Counsel for Debtors,
   MAXIMINO A. SANTOS and GLORIA S.L. SANTOS

7

8

               UNITED STATES BANKRUPTCY COURT

9

                CENTRAL DISTRICT OF CALIFORNIA

10

                   LOS ANGELES DIVISION

11

12  In Re:                      )   Chapter 13
                                )
13                              )   Case No. 2:10-bk-60955-AA
    MAXIMINO A. SANTOS and GLORIA )
14  S.L. SANTOS,                 )   **DEBTORS' SUPPLEMENTAL**
                                )   **MEMORANDUM OF POINTS AND**
15            Debtors.          )   **AUTHORITIES IN SUPPORT OF**
                                )   **CONFIRMATION OF CHAPTER 13 PLAN**
16                              )
                                )   CONFIRMATION HEARING:
17                              )   Date:   February 10, 2011
                                )   Time:   1:30 p.m.
18  _____     )   Ctrm:   1375, 13th Floor

19  TO THE HONORABLE ALAN M. AHART, UNITED STATES BANKRUPTCY JUDGE,
    KATHY A. DOCKERY, CHAPTER 13 TRUSTEE, AND ALL OTHER PARTIES IN INTEREST:
20
21       Pursuant to the request of the Court, Debtors MAXIMINO A. SANTOS and GLORIA S.L.

22  SANTOS ("Debtors") hereby submit their supplemental brief in support of confirmation of

23  their Chapter 13 plan.

    Dated: March 9, 2011                    Respectfully submitted,
24
25                                          Law Office of Peter M. Lively

26                                          By:_____
                                                Peter M. Lively
27
                                            Counsel for Debtors, MAXIMINO A.SANTOS
28                                          and GLORIA S.L. SANTOS

**DEBTORS' SUPPLEMENTAL MEMORANDUM
OF POINTS AND AUTHORITIES
IN SUPPORT OF CONFIRMATION OF CHAPTER 13 PLAN**

<u>TABLE OF CONTENTS</u>

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    BACKGROUND/STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.    Debtors' Monthly Disposable Income and their Chapter 13 Plan . . . . . . . . . . . . . 2

       B.    Liens Against Debtors' Primary Residence . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       C.    The Trustee's Objection to Confirmation of the Chapter 13 Plan/Issue . . . . . . . . . . 3

III.   DEBTORS HAVE VOLUNTARILY CHOSEN TO USE EXEMPT (SOCIAL
       SECURITY) INCOME TO SUPPORT THEIR PLAN, BUT HAVE NO POSITIVE
       INCOME PURSUANT TO THE MEANS TEST, AND ADJUSTING FOR
       FORESEEABLE CHANGES IN THEIR INCOME AND EXPENSES, WITHOUT
       USING THE EXEMPT INCOME, DOES NOT RESULT IN POSITIVE INCOME
       UNDER THE MEANS TEST, SO THEREFORE, THERE IS NO APPLICABLE
       COMMITMENT PERIOD IN THIS CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.    INCLUDING THE AMOUNT OF CONSENSUAL LIENS AGAINST DEBTORS'
       PRIMARY RESIDENCE THAT HAVE BEEN AVOIDED POST-PETITION IN THE
       FORMULA FOR DETERMINING DEBT LIMIT COMPLIANCE UNDER 11 U.S.C.
       SECTION 109(e), DOES NOT ACHIEVE THE PURPOSE OF AFFORDING DEBTORS
       RELIEF UNDER CHAPTER 13 AND THEREFORE THIS HONORABLE COURT
       SHOULD FIND THAT DEBTORS MAY REMAIN IN CHAPTER 13, AND SHOULD
       CONFIRM THEIR PLAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.    At the Time that Congress Enacted Section 109(e) Debt Limits, the Cleavage
             Date Principle and its Potential Conflict with Affording Debtors Relief under
             Chapter 13 Was Not Thoroughly Addressed. . . . . . . . . . . . . . . . . . . . . . . . . 7

       B.    The Facts of this Case, As Well As Others, Highlight the Inconsistency in this
             Blind Application of Section 506(a) Analysis for Chapter 13 Debt Limit
             Eligibility Determination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       C.    The Ninth Circuit's Analysis of Liens Avoided Pursuant to 11 U.S.C. § 522(f)
             Supports Debtors' Eligibility with Regard to Secured Debt Limits under
             Section 109(e) But Does Not Apply to Consensual Secured Liens. . . . . . . . . . . . . 9

       D.    Certain Limitations on the Status of the Avoided Liens Supports Excluding
             them from the Formula for Calculation of Total Unsecured Debt for Section
             109(e) Eligibility Purposes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

EXHIBITS

Exhibit A- Debtors' Schedules I & J . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Exhibit B- Debtors' B22C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Exhibit C- Debtors' Chapter 13 Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Exhibit D- Order on Debtors' Motion to Avoid Junior Lien on Primary Residence . . . . . . ..33

**DEBTORS' SUPPLEMENTAL MEMORANDUM**
**OF POINTS AND AUTHORITIES**
**IN SUPPORT OF CONFIRMATION OF CHAPTER 13 PLAN**

<u>TABLE OF AUTHORITIES</u>

Cases

*Brown & Co. Securities Corp. v. Balbus (In re Balbus)*, 933 F.2d 246 (4th Cir. 1991) . . . . . . . . .  12

*Dewsnup v. Timm*, 502 U.S. 410 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Hamilton v. Lanning*, 560 U.S. ___ (2010); 130 S.Ct. 2464 (2010) . . . . . . . . . . . . . . . . . . . . . . . .  5

*In re Lambert*, 43 B.R. 913 (Bankr. D. Utah 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Maney v. Kagenveama (In re Kagenveama)*, 527 F.3d 990 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . .  5

*Matter of Day,* 747 F.2d 405 (7th Cir. 1984*)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Miller v. United States Farm Home Administration (In re Miller)*, 907 F.2d 80 (8th Cir. 1990) . . . .  12

*Nobelman v. American Savings Bank (In re Nobelman)*, 508 U.S. 324 (1993) . . . . . . . . . . . .  8, 12

*Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 7,10

*Sexton v. Dreyfus*, 219 U.S. 339 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Smith v. Rojas*, 435 B.R. 637 (9th Cir. BAP 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 9

*Soderlund v. Cohen (In re Soderlund)*, 236 B.R. 271 (9th Cir. BAP 1999). . . . . . . . . . . . . . . . . . .  12

Statutes

11 U.S.C. section (109)(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 4, 6-13

11 U.S.C. section 363(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 12

11 U.S.C. section 506(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 6-8, 13

11 U.S.C. section 506(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 3, 4, 6

11 U.S.C. section 522(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 3, 10

11 U.S.C. section 1322(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 12, 13

11 U.S.C. section 1325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

11 U.S.C. section 1325(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

11 U.S.C. section 1325(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 4, 5

**DEBTORS' SUPPLEMENTAL MEMORANDUM
OF POINTS AND AUTHORITIES
IN SUPPORT OF CONFIRMATION OF CHAPTER 13 PLAN**

I.    <u>INTRODUCTION</u>

The Chapter 13 debtors herein are above-median but application of the Means Test results in zero monthly disposable income. Debtors' Schedule I includes exempt Social Security income. Expenses set forth on Schedule J subtracted from income set forth on Schedule I yield a positive number. Debtors' Chapter 13 Plan proposes a plan payment using the I minus J figure. There are no foreseeable circumstances that would cause a change in the results of the Means Test, and the exempt income being used for calculation purposes exceeds the amount of the proposed plan payment. For this reason, Debtors have proposed a 36-month plan term on the ground that there is no applicable commitment period under 11 U.S.C. § 1325(b)(1)(B). The Chapter 13 Trustee has objected to confirmation on this basis. Debtors assert that their Chapter 13 Plan meets the requirements for confirmation and should be confirmed.

Debtors have successfully avoided three junior liens secured by their residence; one judgment lien pursuant to 11 U.S.C. §522(f) and two consensual liens pursuant to 11 U.S.C. § 506(d). The Chapter 13 Trustee claims that the amount of debt secured by all of the avoided liens should be used to calculate total unsecured debt in the case, and that in so doing, Debtors are rendered ineligible for Chapter 13 pursuant to 11 U.S.C. § 109(e). Debtors assert that using section 506(a) lien valuation analysis for purposes of section 109(e) ignores the purpose for such valuation, to-wit, plan confirmation, is not consonant with Congressional intent in creating the section 109(e) debt limits, and is bad policy because it prevents many middle-class debtors from obtaining relief under Chapter 13. Debtors further assert that because the holders of the avoided liens retain certain rights throughout the case, their claims are not truly unsecured until the case is finalized (either through payment in full under the plan and discharge, dismissal, or conversion), and thus these quasi-secured claims should not be included for purposes of calculating unsecured debt for Chapter 13 eligibility purposes. Debtors assert that they are eligible for Chapter 13 and that their Chapter 13 Plan should be confirmed.

1   II.    BACKGROUND/STATEMENT OF FACTS

2        Debtors MAXIMINO A. SANTOS and GLORIA S.L. SANTOS ("Debtors") filed their

3   emergency voluntary petition under Chapter 13 of the U.S. Bankruptcy Code on November 29, 2010.

4        A.    Debtors' Monthly Disposable Income and their Chapter 13 Plan

5        Debtors filed their Schedules I and J ("Debtor's I & J") on December 9, 2010, copies of

6   which are attached hereto collectively for the convenience of the Court as **Exhibit A** and

7   incorporated herein by reference. Debtors filed their Amended Form B22C on January 18, 2011

8   ("Debtors' B22C"), a copy of which is attached hereto for the convenience of the Court as **Exhibit B**

9   and incorporated herein by reference.

10        According to Debtors' B22C, also known as the "Means Test" or objective measure of

11   Debtors' disposable income, their monthly disposable income is $-4,068.12, that is, a negative

12   amount. According to Debtors' I and J, which reflect Debtors' actual income and expenses,

13   however, Debtor's monthly disposable income is $923.06. This positive figure is yielded after

14   inclusion of Debtors' Social Security income of $1,233, which is exempt.

15        On December 9, 2010, Debtors filed their Chapter 13 Plan (the "Chapter 13 Plan"), a copy of

16   which is attached hereto for the convenience of the Court as **Exhibit C** and incorporated herein by

17   reference. Said Chapter 13 Plan provides for plan payments of $944.49 for 36 months, which

18   provides payment of 3.5% *pro rata* to the claims of unsecured creditors.

19        B.    Liens Against Debtors' Primary Residence

20        As set forth in their Schedule A, the value of Debtors' primary residence, certain real

21   property located at 10343 Park Street, Bellflower, California 90706 (the "Subject Property") is

22   $549,000. *See* official court file. At the time that Debtors' filed their case, there were four liens

23   recorded against their primary residence, specifically:

24        1.    First Deed of Trust held by Bank of America Home Loans

25            Amount: $752,047.89 (the "1st Trust Deed");

26        2.    Second Deed of Trust held by Wells Fargo Bank, N.A.

27            Amount: $194,280.21 (the "2nd Trust Deed");

28

1    3.    Third Deed of Trust held by Wells Fargo Bank, N.A.

2          Amount: $19,990.84 (the "3rd Trust Deed"); and

3    4.    Judgment Lien (recorded abstract of judgment) held by Wells Fargo Bank,

4          N.A. (Wells Fargo Card Services)

5          Amount: $52,080.82 (the "Judgment Lien")

6    Thus, the total amount of secured debt, including all liens, set forth in Debtors' schedules is

7  $1,018,399.67.

8    After the filing of Debtors' case, they proceeded with their motion to avoid junior consensual

9  liens under 11 U.S.C. § 506(d), which resulted in the entry of this Court's Order on Motion to Avoid

10  Junior Lien on Principal Residence on December 28, 2010 (the "506(d) Order"), a copy of which is

11  attached hereto for the convenience of the Court as **Exhibit D** and incorporated herein by reference.

12  Said 506(d) Order avoids the 2nd Trust Deed and 3rd Trust Deed upon Debtors' receipt of a Chapter

13  13 discharge.  Moreover, pursuant to the 506(d) Order, the junior lienholder (Wells Fargo Bank)

14  retains its lien in junior position in the event of dismissal or conversion of Debtor's case, or if the

15  Subject Property is sold or refinanced.

16    In addition, Debtors filed their motion to avoid the Judgment Lien under 11 U.S.C. § 522(f),

17  which resulted in the entry of this Court's Order on Motion to Avoid Lien Under 11 U.S.C. § 522(f)

18  (Real Property) on December 28, 2010.

19    Thus, as of December 28, 2010, the 2nd and 3rd Trust Deeds and the Judgment Lien were

20  avoided as liens, and the value thereof became unsecured claims in Debtors' case for the purpose of

21  plan confirmation.

22    C.    The Trustee's Objection to Confirmation of the Chapter 13 Plan

23    The Chapter 13 Trustee, Kathy Dockery ("Chapter 13 Trustee"), objected to confirmation of

24  Debtor's Chapter 13 Plan, and at the hearing thereon on February 10, 2011, this honorable Court

25  requested that Debtors address two key issues raised by the Chapter 13 Trustee, to-wit:

26    1.    Is there an Applicable Commitment Period here such that Debtors must make

27          payments under their Chapter 13 Plan for 60 months, rather than 36 months, as

28

1  proposed, when their projected disposable income pursuant to the Means Test is not a

2  positive number and adjusting for foreseeable changes in income and expenses

3  without using exempt income does not result in a positive number?

4      2.    Whether avoidance under 11 U.S.C. § 506(d) of the junior consensual liens secured

5  solely by Debtors' primary residence now renders Debtors' total unsecured claims

6  above the debt limits imposed by 11 U.S.C. § 109(e) such that Debtors are no longer

7  eligible for Chapter 13, despite that the lienholders retain rights to enforce their liens

8  throughout the case, and such lien avoidance is not final until Debtors complete their

9  plan payments and obtain their discharge?

10

11  III.    <u>DEBTORS HAVE VOLUNTARILY CHOSEN TO USE EXEMPT (SOCIAL SECURITY)</u>

12  <u>INCOME TO SUPPORT THEIR PLAN, BUT HAVE NO POSITIVE INCOME</u>

13  <u>PURSUANT TO THE MEANS TEST, AND ADJUSTING FOR FORESEEABLE</u>

14  <u>CHANGES IN THEIR INCOME AND EXPENSES, WITHOUT USING THE EXEMPT</u>

15  <u>INCOME, DOES NOT RESULT IN POSITIVE INCOME UNDER THE MEANS TEST, SO</u>

16  <u>THEREFORE, THERE IS NO APPLICABLE COMMITMENT PERIOD IN THIS CASE.</u>

17  Confirmation of Chapter 13 plans is governed by 11 U.S.C. section 1325.  11 U.S.C. section

18  1325(b) provides, in relevant part:

19      "(1) If the trustee or the holder of an allowed unsecured claim objects to the

20  confirmation of the plan, then the court may not approve the plan unless, as of the

21  effective date of the plan— . . .

22      (B) the plan provides that all of the debtor's projected disposable

23  income to be received in the applicable commitment period beginning on the

24  date that the first payment is due under the plan will be applied to make

25  payments to unsecured creditors under the plan."

26  11 U.S.C. § 1325(b)(1).

27

28

1    The Chapter 13 Trustee has objected to confirmation on the grounds that Debtors' Chapter 13

2    Plan is for a 36-month term, however, such objection is invalid.  Debtors here are above-median, but

3    pursuant to their B22C, have no positive disposable income.  In fact, the shortage is substantial - the

4    number calculated through application of the Means Test is negative $4,068.12.   Thus, under the

5    law in this Circuit, as set forth in *Maney v. Kagenveama (In re Kagenveama)*, 527 F.3d 990 (9th Cir.

6    2008), there is no applicable commitment period under 11 U.S.C. § 1325(b)(1)(B), and the plan term

7    may be for 36 months.

8    Debtors' I and J include exempt Social Security income of $1,233, as well as contributions

9    from their family and the reduction of secured debt payments through lien avoidance, which yields a

10   positive number sufficient to support their proposed plan payment.  The amount of exempt income

11   being contributed to the Chapter 13 Plan exceeds the plan payment.  Even if circumstances were to

12   change such that other factors increased Debtors' disposable income, however, there is no reasonably

13   foreseeable increase in income or reduction in expenses that would yield a positive number that

14   would exceed the current Means Test result plus the proposed plan payment of $944.49.  So while

15   the "forward-looking" approach of *Hamilton v. Lanning*, 560 U.S. ___ (2010); 130 S.Ct. 2464

16   (2010), might impact some cases, it is not applicable here because there is no foreseeable

17   circumstance that would result in a positive Means Test result.

18   The Chapter 13 Trustee claims that recent case law supports objection to confirmation insofar

19   as Debtors' circumstances may change in the future so that their income increases.  *Lanning* instructs

20   that a court "should begin by calculating disposable income, and in most cases, nothing more is

21   required." *(Slip Op.* pp. 12; 130 S.Ct. at 2475).  "It is only in unusual cases that a court may go

22   further and take into account other **known or virtually certain information** about the debtor's

23   future income or expenses." *(Slip Op.* pp. 12-13; 139 S.Ct. at 2475) (Emphasis added).  Projected

24   disposable income includes foreseeable changes in income and expenses, but not exempt Social

25   Security income.  This holds true whenever the amount of current monthly exempt (Social Security)

26   income is greater than I minus J, such as is the case here.  Since there is no such known or virtually

27   certain information that would change the result of Debtors' Means Test and lead to a positive

28

-5-

1 number, there is no projected monthly disposable income and therefore no applicable commitment

2 period for Debtors' case.  Accordingly, Debtors' proposed Chapter 13 plan should be confirmed.

3

4 IV. INCLUDING THE AMOUNT OF CONSENSUAL LIENS AGAINST DEBTORS'

5  PRIMARY RESIDENCE THAT HAVE BEEN AVOIDED POST-PETITION IN THE

6  FORMULA FOR DETERMINING DEBT LIMIT COMPLIANCE UNDER 11 U.S.C.

7  SECTION 109(e), DOES NOT ACHIEVE THE PURPOSE OF AFFORDING DEBTORS

8  RELIEF UNDER CHAPTER 13 AND THEREFORE THIS HONORABLE COURT

9  SHOULD FIND THAT DEBTORS MAY REMAIN IN CHAPTER 13, AND SHOULD

10  CONFIRM THEIR PLAN.

11 As this honorable Court is surely aware, 11 U.S.C. section 109(e) provides:

12 "Only an individual with regular income that owes, on the date of the filing of

13 the petition, noncontingent, liquidated, unsecured debts of less than $360,475 and

14 noncontingent, liquidated, secured debts of less than $1,010,650, or an individual

15 with regular income and such individual's spouse, except a stockbroker or a

16 commodity broker, that owe, on the date of the filing of the petition, noncontingent,

17 liquidated, unsecured debts that aggregate less than $360,475 and noncontingent,

18 liquidated, secured debts of less than $1,010,650,  may be a debtor under chapter 13

19 of this title."

20 Whether the unsecured debt limit includes the amount of debts ostensibly secured by liens on

21 the date of filing of the petition, which are determined to be undersecured or wholly unsecured

22 pursuant to 11 U.S.C. § 506(a), and thus avoided under 11 U.S.C. § 506(d) after the case is filed, has

23 been a subject of some controversy.

24 . . .

25 . . .

26 . . .

27 . . .

28

1    A.    <u>At the Time that Congress Enacted Section 109(e) Debt Limits, the Cleavage Date</u>

2    <u>Principle and its Potential Conflict with Affording Debtors Relief under Chapter 13</u>

3    <u>Was Not Thoroughly Addressed.</u>

4    Our bankruptcy system was taken from the English system, in which the "cleavage point

5 principle" for fixing creditors' rights against a debtor's bankruptcy estate, that is, use of the date of

6 filing the petition for such purpose, remains the general rule under modern bankruptcy law. *Sexton*

7 *v. Dreyfus*, 219 U.S. 339, 344-45 (1911).[1] Thus, in chapter 13 cases concerning debtor eligibility,

8 courts have continued to follow the cleavage date principle by analyzing allegedly secured claims

9 with questionable secured status at the time of the filing of the petition through valuation under 11

10 U.S.C. § 506(a) post-petition for purposes of defining "unsecured" and "secured" debt. *See Scovis v.*

11 *Henrichsen (In re Scovis)*, 249 F.3d 975, 983 (9th Cir. 2001). This has, unfortunately, led to

12 consequences that surely cannot be consonant with the intent of Congress in enacting 11 U.S.C. §

13 109(e).

14    Section 506(a) provides, in relevant part:

15        "An allowed claim of a creditor secured by a lien on property in which the

16    estate has an interest. . . is a secured claim to the extent of the value of such creditor's

17    interest in the estate's interest in such property . . . and is an unsecured claim to the

18    extent that the value of such creditor's interest . . . is less than the amount of such

19    allowed claim. **Such value shall be determined in light of the purpose of the**

20    **valuation and of the proposed disposition or use of such property, and in**

21    **conjunction with any hearing on such disposition or use or on a plan affecting**

22    **such creditor's interest."**

23 11 U.S.C. § 506(a)(1). (Emphasis added).

---

[1]  This cleavage point rule originated from the migratory court system in England during the nineteenth century wherein a secured creditor would be called upon to sell or have his security valued on the spot - a so-called 'pie powder' court. *Sexton v. Dreyfus*, 219 U.S. 339, 344-45 (1911), citing *Parks v. City of Boston*, 32 Mass. 198, 208 (1834).

1    For reasons unknown, courts have chosen to ignore a critical component of the statute, that is,

2 "in light of the purpose of the valuation." As discussed more fully below, when section 506(a)

3 valuation is used for the purpose of furthering the practical consideration of plan confirmation, it

4 makes sense. However, use of section 506(a) for purposes of determining section 109(e) eligibility

5 does not.

6    B.    The Facts of this Case, As Well As Others, Highlight the Inconsistency in this Blind

7          Application of Section 506(a) Analysis for Chapter 13 Debt Limit Eligibility

8          Determination.

9    Debtors here are ordinary middle-class wage earners and small businesspeople. The liens

10 against the Subject Property far exceed its value. Debtors' sole recourse[2] to resolve their current

11 predicament, other than complete abandonment of their family residence, is to avoid those liens

12 which have become unsecured by the decline in property values during the current economic

13 downturn (or "Great Recession").[3] These are not debtors for whom Chapter 11 is a practical option

14 given their economic status. Thus, Chapter 13 is their solution, yet by mechanical application of

15 506(a) analysis in the manner that has become accepted, they are "debt-limited out" of Chapter 13.

16    This anomaly was recently pointed out by Judge Jaroslovksy in *Smith v. Rojas*, 435 B.R. 637

17 (9th Cir. BAP 2010):

18          "The confluence of new circumstances and old cases has created a perfect

19

20    [2]    "The only meaningful relief under the Bankruptcy Code for debtors caught in the mortage crisis is the
21          ability, in some chapter 13 cases, to remove junior encumbrances against their home. For most of
          these debtors, the complexity and expense of a chapter 11 case is beyond their means. My sense of
          fairness and the depth of the crisis lead me to look for a way to make chapter 13 available to debtors
22          [like those here]." *Smith v. Rojas*, 435 B.R. 637, 649-650 (9th Cir. BAP 2010), concurring opinion
          by Judge Jaroslovsky.

23
          Indeed, the distinctions drawn in *Nobelman v. American Savings Bank (In re Nobelman)*, 508 U.S.
24          324 (1993), and later cases wherein a debtor is permitted to strip fully unsecured liens determined
          under 11 U.S.C. §§ 506(a) and (d) in chapter 13 pursuant to 11 U.S.C. § 1322(b)(2), but are not
25          allowed to do so in chapter 7 become virtually meaningless in this context. Section 506 works against
          debtors in Chapter 13 for eligibility determination and therefore precludes debtors from the benefit
26          of Chapter 13 lien avoidance, yet debtors are not allowed to avail themselves of section 506 lien
          avoidance in Chapter 7. The manifest unfairness of this interpretation of the statutory scheme is plain.
27          See note 8 below.

          [3]    *Smith v. Rojas*, 435 B.R. 637, 643 (9th Cir. BAP 2010)
28

-8-

1   Catch-22; [the debtors] are ineligible for chapter 13 because they need the relief

2   afforded by chapter 13, and would be eligible if they did not need the relief.

3       "I begin by noting that we are declaring ineligible debtors who were clearly

4   intended by Congress to be eligible for chapter 13 relief. . .. Eligibility for chapter 13

5   should be liberally interpreted so as not to unnecessarily obstruct the eligibility of

6   debtors desiring relief. *In re Lambert*, 43 B.R. 913, 919 (Bankr. D. Utah 1984).  This

7   is especially the case when the debtors seeking relief are exactly the kind of debtors

8   Congress had in mind when fashioning eligibility."

9   435 B.R. at 649 (concurring opinion).

10      "It is purposeless to the point of cruelty to maintain a rule of law which

11  benefits nobody, does only harm and severely limits the availability of salutary law."

12  435 B.R. at 650.

13      "A review of the legislative history of § 109(e) makes it clear that the dollar

14  amounts were deemed necessary by Congress because chapter 13 was being opened to

15  small businesses, a major change from old chapter XIII which was limited to wage

16  earners.  The limitations were deemed necessary to keep businesses out of chapter 13,

17  which were more properly reorganized in chapter 11.  9 Bkr.L.Ed., Legislative History

18  § 82:4.  Congress clearly did not intend the limits to keep ordinary middle class wage

19  earners out of chapter 13."[4]

20  435 B.R. at 649, Note 9.

21      Judge Jaroslovsky's eloquent discussion of the issue does not require embellishment.  The

22  cognitive dissonance is obvious.

23  . . .

24  . . .

25  . . .

26

27  [4]    "[A]n unforeseen and uprecedented drop in home value [has] created an impediment to chapter 13
    relief certainly not within the contemplation of Congress in 1978." 435 B.R. at 650.
28

1   C.   <u>The Ninth Circuit's Analysis of Liens Avoided Pursuant to 11 U.S.C. § 522(f)</u>

2        <u>Supports Debtors' Eligibility with Regard to Secured Debt Limits under Section</u>

3        <u>109(e) But Does Not Apply to Consensual Secured Liens.</u>

4        Debtors' total secured debt, including all liens, at the time of filing their case was over the

5   secured debt limit of section 109(e).[5]  Under the law of this Circuit, however, the Judgment Lien, is

6   not included in the secured debt calculation.  Thus, even if the avoided 2nd and 3rd Trust Deeds are

7   not treated as unsecured debt (because of their quasi-secured status discussed more fully in section

8   IV.D. below) and are treated as secured for purposes of secured debt limit calculation, Debtors are

9   within the eligibility requirements of section 109(e).

10       In *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975 (9th Cir. 2001), the Ninth Circuit's

11  reasoning regarding use of avoided non-consensual judgment liens for the purpose of calculation of

12  unsecured debt to determine section 109(e) eligibility makes sense.  The court there found that in

13  such circumstances, the debt typically originated as an unsecured debt.  The creditor has taken legal

14  action pre-petition, eventually obtaining a judgment against the debtor.  This judgment has been

15  recorded so that it has become a lien secured by the debtor's real property.  When this type of lien is

16  avoided, the debt is returned to its original status as unsecured, and using the claim in the calculation

17  of total unsecured debt for section 109(e) eligibility is thus fair.  The debt was fixed and certain as

18  unsecured at the time the creditor and debtor first entered into their relationship, and this certainty is

19  carried through for eligibility determination (as well as for lien avoidance under Chapter 7, providing

20  a uniform reading of the Bankruptcy Code).

21       On the other hand, consensual debt secured by an interest in real property, such as in the

22  instant matter, differs - both the lienholder and Debtors took knowing risk as to the value of the

23  security at the time they entered into their relationship.  When, as here, the value of the security has

24  diminished, both lienholder and Debtors are now sharing in the consequences of that risk.  At the

25  time that they entered into their loan transaction, neither the lienholder nor Debtors had complete

26

27  [5]   Debtors' total secured debt pursuant to their Schedule D is $1,018,399.67, which includes the avoided
          Judgment Lien of $52,080.82.

28

-10-

1  certainty as to the nature of the debt.  Ultimately, the debt was rendered undersecured by market

2  forces. But at the time that the relationship between the lienholder and Debtors began, the ultimate

3  character of the debt was not fixed nor was it certain.  This uncertainty should also be carried

4  through for eligibility determination, that is, the now unsecured debt (or "quasi-secured debt" - see

5  section IV.D. below), so determined for plan confirmation purposes subject to completion of the

6  plan, should not be used in the unsecured debt calculation under section 109(e).

7          D.     Certain Limitations on the Status of the Avoided Liens Supports Excluding them

8                  from the Formula for Calculation of Total Unsecured Debt for Section 109(e)

9                  Eligibility Purposes.

10      While the avoided liens are rendered "unsecured" by the 506(d) Order for the purpose of plan

11  confirmation, in actuality, the lienholder[6] retains certain rights that no other unsecured claimants

12  hold.  Thus, characterizing the avoided liens as of the same status as other unsecured claims is not

13  only inaccurate, but unfair to Debtors insofar as it hampers their ability to remain in Chapter 13

14  because of section 109(e) debt limits, yet constrains their ability to truly treat the claim as unsecured

15  until their case has finalized.  In actuality, this retention of rights places the debt secured by the liens

16  into its own category - it is "quasi-secured" - because a substantial portion of the bundle of rights the

17  lienholder held as a secured creditor still remains vested in the lienholder.

18      These rights are delineated both by the Bankruptcy Code and this honorable Court's orders.

19  As set forth in 11 U.S.C. § 363(k),[7] the lienholder retains the right to credit bid at a foreclosure sale.

20  In addition, as set forth in the 506(d) Order, the lienholder has a right to share in the proceeds should

21  the Subject Property be sold or refinanced.  Thus, the lienholder retains rights attendant to its security

22  interest throughout the course of Debtors' case, and its claim is thus not fully unsecured, other than

23  for purposes of plan confirmation, until the case is finalized.

24

25  [6]     Wells Fargo Bank, N.A. is the holder of both the 2nd and 3rd Trust Deeds, hence there is only a singular
lienholder.

26  [7]     "At a sale . . . of property that is subject to a lien that secures an allowed claim, unless the court for
27  cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim
purchases such property, such holder may offset such claim against the purchase price of such
property." 11 U.S.C. § 363(k).

28

1    In addition, as set forth in the 506(d) Order, the 2nd and 3rd Trust Deeds are not avoided until

2    Debtors make all plan payments and receive their discharge.  Moreover, the 506(d) Order, as well as

3    section 1322(b)(2) of the Code, specifically provide that the liens are not avoided if the case is

4    converted to chapter 7 or is dismissed.  So again, the lienholder retains the rights attendant to its

5    security interest until Debtors' case is finalized.

6    In *Miller v. United States Farm Home Administration (In re Miller)*, 907 F.2d 80 (8th Cir.

7    1990), the Eighth Circuit engaged in a mechanical application of section 506(a) analysis to determine

8    109(e) eligibility, and failed to take into account the retention of these rights under sections 363(k)

9    and 1322(b) of the Code.[8]  Other courts have similarly failed, apparently because the issue has

10   simply not been applicable and/or addressed.  *See, e.g., Matter of Day*, 747 F.2d 405 (7th Cir. 1984*);

11   Brown & Co. Securities Corp. v. Balbus (In re Balbus)*, 933 F.2d 246 (4th Cir. 1991).[9]  That this issue

12   has not been addressed highlights the fallacy inherent in blind application of section 506(a) to section

13   109(e) eligibility determination, that is, the failure to take into account the nature of the interest and

14   the rights that are part of that interest.  Where a lienholder retains so many substantial rights that are

15   attendant with secured status, to treat that lienholder's claim as unsecured is simply disingenuous,

16   and achieves no other purpose than to keep individuals such as Debtors here from attaining the relief

17   they should be able to receive under the Bankruptcy Code.

18   Thus, characterizing the debt affected by the lien avoidance as "unsecured" for purposes of

19   section 109(e) is inaccurate.  The lienholder retains most of the rights of a secured party until

20   Debtors' case reaches a conclusion, whether by virtue of completion of Debtors' plan payments and

21   discharge, dismissal, or conversion, thereby making the characterization of the debt uncertain.  For

22

23   [8]   "We note that a different question might be presented if the debts in question were entitled to the
24         protection afforded by § 1322(b)(2), *i.e.*, claims secured only a security interest in real property that
             is the debtor's principal residence."  *Soderlund v. Cohen (In re Soderlund)*, 236 B.R. 271, 275, Note
25         5 (9th Cir. BAP 1999) (citing *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993) and
             *Dewsnup v. Timm*, 502 U.S. 410 (1992)).

26   [9]   The courts are concerned with "creative scheduling" by a debtor that will create Chapter 13 eligibility
27         where it does not legitimately apply.  But this reasoning casts an overly wide net to catch a debtor who
             is simply trying to manipulate the system.  This is a far cry from the situation here, where a middle-
             class family is trying to preserve the family residence.
28

-12-

1  this reason, such quasi-secured debt should not be included in the section 109(e) calculations of

2  unsecured debt for eligibility under Chapter 13.  Since Debtors are eligible for relief under Chapter

3  13 relief if the quasi-secured debt is not included for eligibility determination purposes, and their

4  Chapter 13 Plan meets confirmation requirements, their Chapter 13 Plan should be confirmed.

5

6  <u>**Conclusion**</u>

7      Debtors have no monthly disposable income pursuant to the Means Test, yet by using their

8  exempt Social Security income, their actual income less their actual expenses yields an amount

9  sufficient to support a Chapter 13 plan payment.  Since they have no monthly disposable income

10  according to the Means Test, there is no applicable commitment period and Debtors plan term of 36

11  months is acceptable under the Bankruptcy Code.  For this reason, Debtors' Chapter 13 Plan should

12  be confirmed.

13      Debtors have avoided two consensual liens against their primary residence, but the lienholder

14  retains certain rights concomitant with a security interest.  Characterizing the lienholder's claim as

15  "unsecured" for purposes of 11 U.S.C. § 109(e) chapter 13 eligibility is unfair and fails to take into

16  account the purpose for which valuation of the lien under 11 U.S.C. § 506(a) occurred, that is, plan

17  confirmation.  Moreover, the legislative purpose behind the eligibility limitations of section 109(e)

18  are not achieved by such blind application of section 506(a) and fail to take into account 11 U.S.C. §

19  1322(b)(2) and lien avoidance as a mechanism to support reorganization, especially for middle-class

20  debtors seeking preservation of their family residence.  For these reasons, the quasi-secured debt

21  secured by the avoided liens should not be included in calculations of Debtors' eligibility for Chapter

22  13 status under section 109(e), and Debtors' Chapter 13 Plan should be confirmed.

23  Dated: March 9, 2011              Respectfully submitted,

24                            Law Office of Peter M. Lively

25

26                            By:_____
                                 Peter M. Lively

27                            Counsel for Debtors, MAXIMINO A.SANTOS
                            and GLORIA S.L. SANTOS

28

Form B6I  - (Rev. 12/07)                                                    2007 USBC, Central District of California

| In re | Maximino Alcantara Santos<br>Gloria San Luis Santos | Debtors. | Case No.:<br>**2:10-bk-60955-AA** | (If known) |
|---|---|---|---|---|

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status:    **Married** | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| | RELATIONSHIP(S) | AGE(S) |
| | | |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Clerk** | **Retired** |
| Name of Employer | **City of Los Angeles** | |
| How long employed | **22 years** | |
| Address of Employer | **100 West 1st Street<br>Los Angeles, CA 90012** | |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | | DEBTOR | SPOUSE |
|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ | 4,696.53 | $ 0.00 |
| 2. Estimate monthly overtime | $ | 0.00 | $ 0.00 |
| 3. SUBTOTAL | $ | 4,696.53 | $ 0.00 |
| 4. LESS PAYROLL DEDUCTIONS | | | |
| a. Payroll taxes and social security | $ | 449.14 | $ 0.00 |
| b. Insurance | $ | 0.00 | $ 0.00 |
| c. Union dues | $ | 49.11 | $ 0.00 |
| d. Other (Specify)  Disability Insurance | $ | 96.20 | $ 0.00 |
| Health Insurance | $ | 44.32 | $ 0.00 |
| LACEA | $ | 224.77 | $ 0.00 |
| Life Insurance | $ | 151.60 | $ 0.00 |
| Parking | $ | 12.64 | $ 0.00 |
| Retirement | $ | 306.56 | $ 0.00 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 1,334.34 | $ 0.00 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 3,362.19 | $ 0.00 |
| 7. Regular income from operation of business or profession or farm (attach detailed statement) | $ | 3,113.19 | $ 0.00 |
| 8. Income from real property | $ | 0.00 | $ 0.00 |
| 9. Interest and dividends | $ | 0.00 | $ 0.00 |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ | 0.00 | $ 0.00 |
| 11. Social security or other government assistance (Specify)   Social Security Income | $ | 0.00 | $ 1,233.00 |
| 12. Pension or retirement income | $ | 0.00 | $ 0.00 |
| 13. Other monthly income | | | |

Form B6I - (Rev. 12/07)                                                           2007 USBC, Central District of California

| In re | Maximino Alcantara Santos | | Case No.: | |
|---|---|---|---|---|
| | Gloria San Luis Santos | Debtors. | 2:10-bk-60955-AA | (If known) |

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

| (Specify) | | | | |
|---|---|---|---|---|
| Contribution from Daughter | $ | 450.00 | $ | 0.00 |
| Contribution from Daughter #2 | $ | 500.00 | $ | 0.00 |
| Contributuin from Son | $ | 250.00 | $ | 0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 4,313.19 | $ | 1,233.00 |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | 7,675.38 | $ | 1,233.00 |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | | $ 8,908.38 | | |

(Report also on Summary of Schedules and, if applicable, on
Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document.:
**None Anticipated**

| Debtor: Maximo Alcantara & Gloria San Luis Santos | |
|---|---|
| | **Projection** |
| **Gross Earning** | $3,113.19 |
| | |
| **Expenses:** | |
| Advertisement | $62.50 |
| Continuing Education | $18.83 |
| Broker Office Fee | $40.00 |
| Association Membership | $133.17 |
| Gasoline | $130.83 |
| Supplies | $258.67 |
| | |
| **Total Expenses:** | $644.00 |
| | |
| **Net Income:** | $2,469.19 |

Exhibit "A" - Page 3 of 4

Form B6J - (Rev. 12/07)                                          2007 USBC, Central District of California

| In re | **Maximino Alcantara Santos** | | Case No.: | |
|---|---|---|---|---|
| | **Gloria San Luis Santos** | Debtors. | **2:10-bk-60955-AA** | (If known) |

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made biweekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form22A or 22C.

☐  Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | 3,916.92 |
| a. Are real estate taxes included?    Yes _____  No ✓ | | |
| b. Is property insurance included?    Yes _____  No ✓ | | |
| 2. Utilities: a. Electricity and heating fuel | $ | 285.00 |
| b. Water and sewer | $ | 110.00 |
| c. Telephone | $ | 75.00 |
| d. Other **Cable** | $ | 89.00 |
| **Natural Gas** | $ | 31.00 |
| **Security System** | $ | 31.00 |
| 3. Home maintenance (repairs and upkeep) | $ | 50.00 |
| 4. Food | $ | 800.00 |
| 5. Clothing | $ | 100.00 |
| 6. Laundry and dry cleaning | $ | 40.00 |
| 7. Medical and dental expenses | $ | 160.00 |
| 8. Transportation (not including car payments) | $ | 120.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | 100.00 |
| 10. Charitable contributions | $ | 40.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
| a. Homeowner's or renter's | $ | 53.00 |
| b. Life | $ | 374.00 |
| c. Health | $ | 77.00 |
| d. Auto | $ | 70.00 |
| e. Other **Disability (AFLAC)** | $ | 76.40 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | |
| (Specify)    **Real Property Taxes** | $ | 417.00 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | |
| a. Auto | $ | 0.00 |
| b. Other _____ | $ | 0.00 |
| 14. Alimony, maintenance, and support paid to others | $ | 0.00 |
| 15. Payments for support of additional dependents not living at your home | $ | 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 644.00 |
| 17. Other **Cell Phone** | $ | 226.00 |
| **Personal Care** | $ | 100.00 |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ | 7,985.32 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

**None Anticipated**

| 20. STATEMENT OF MONTHLY NET INCOME | | |
|---|---|---:|
| a. Average monthly income from Line 15 of Schedule I | $ | 8,908.38 |
| b. Average monthly expenses from Line 18 above | $ | 7,985.32 |
| c. Monthly net income (a. minus b.) | $ | 923.06 |

**Exhibit "A" – Page 4 of 4**

Form B22C (Chapter13) - (12/10)                    2010 USBC, Central District of California

| In re  Maximino Alcantara Santos, Gloria San Luis Santos | Case No.:  2:10-bk-60955-AA |
|---|---|
| Debtor. | (if known) |

According to the calculations required by this statement:
☐ The applicable commitment period is 3 years.
☑ The applicable commitment period is 5 years.
☑ Disposable income is determined under § 1325(b)(3)
☐ Disposable income is not determined under § 1325(b)(3)
(Check the boxes as directed in Lines 17 and 23 of this statement.)

## STATEMENT OF CURRENT MONTHLY INCOME AND
## CALCULATION OF COMMITMENT PERIOD AND DISPOSABLE INCOME
## FOR USE IN CHAPTER 13

In addition to Schedules I and J, this statement must be completed by every individual chapter 13 debtor, whether or not filing jointly. Joint debtors may complete one statement only.

| | **Part I. REPORT OF INCOME** | | |
|---|---|---|---|
| 1 | **Marital/filing status.** Check the box that applies and complete the balance of this part of this statement as directed.<br>a. ☐ Unmarried. **Complete only Column A ("Debtor's Income") for Lines 2-10.**<br>b. ☑ Married. **Complete both Column A ("Debtor's Income") and Column B (Spouse's Income) for Lines 2-10.** | | |
| | All figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line. | Column A<br>Debtor's<br>Income | Column B<br>Spouse's<br>Income |
| 2 | **Gross wages, salary, tips, bonuses, overtime, commissions.** | $4,696.53 | $0.00 |
| 3 | Income from the operation of a business, profession or farm. Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 3. If you operate more than one business, profession or farm, enter aggregate numbers and provide details on an attachment. Do not enter a number less than zero. **Do not include any part of the business expenses entered on Line b as a deduction in Part IV.** | $1,887.95 | $0.00 |
| | a. Gross Receipts $ 1,887.95<br>b. Ordinary and necessary business expenses $ 0.00<br>c. Business income  Subtract Line b from Line a | | |
| 4 | Rent and other real property income. Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 4. **Do not enter a number less than zero. Do not include any part of the operating expenses entered on Line b as a deduction in Part IV.** | $0.00 | $0.00 |
| | a. Gross Receipts $ 0.00<br>b. Ordinary and necessary operating expenses $ 0.00<br>c. Rent and other real property income  Subtract Line b from Line a | | |
| 5 | **Interest, dividends, and royalties.** | $0.00 | $0.00 |
| 6 | **Pension and retirement income.** | $0.00 | $0.00 |
| 7 | **Any amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose.** Do not include alimony or separate maintenance payments or amounts paid by the debtor's spouse. Each regular payment should be reported in only one column; if a payment is listed in Column A, do not report that payment in Column B. | $0.00 | $0.00 |

**Exhibit "B" – Page 1 of 8**